US DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NUMBER: 1:14CV22393

EUROSPORT ACTIVE WORLD CORPORATION, INC.,
    Plaintiff,

vs.

BANQUE CANTONALE NEUCHATELOISE
a/k/a BANQUE CANTONALE NEUCHATEL
a/k/a BCN, a Swiss Banking Corporation, DAVID
MOSER, individually and as employee and agent for
BANQUE CANTONALE NEUCHATEL, and
NELCY MAYOREZ-BOVET a/k/a "CX2", individually
and as employee and agent for BANQUE CANTONALE
NEUCHATEL,
    Defendant(s).
_____/

## COMPLAINT

EUROSPORT ACTIVE WORLD CORPORATION, INC. (hereinafter "EAWC" or "Plaintiff"), sues BANQUE CANTONALE NEUCHATELOISE a/k/a BANQUE CANTONALE NEUCHATEL a/k/a BCN, a Swiss Banking Corporation (hereinafter "Bank" or "Defendant" or "BCN"), DAVID MOSER, individually and as employee and agent for BANQUE CANTONALE NEUCHATEL (hereinafter MOSER), and NELCY MAYOREZ-BOVET a/k/a "CX2", individually and as employee and agent for BANQUE CANTONALE NEUCHATEL (hereinafter MAYOREZ-BOVET), and states:

1. This is an action for damages based on the Defendants' intentional interference with the Plaintiff's advantageous business relationship and for libel.

## THE PARTIES

2. Plaintiff, EUROSPORT ACTIVE WORLD CORPORATION, INC. is a Florida Corporation with its main office in Miami-Dade County, Florida. EUROSPORT ACTIVE WORLD CORPORATION, INC. is in the renewable technology business. EUROSPORT ACTIVE WORLD CORPORATION, INC. is listed on the OTC, on the NASDAQ exchange with the symbol EAWD, and listed with the ISIN No.: US29880V1052-EAWCUS.

1

3. Defendant, BANQUE CANTONALE NEUCHATELOISE a/k/a BANQUE CANTONALE NEUCHATEL a/k/a BCN is a Swiss Banking Firm with a principal place of business in Neuchatel, Switzerland. BANQUE CANTONALE NEUCHATELOISE a/k/a BANQUE CANTONALE NEUCHATEL a/k/a BCN is a Swiss chartered banking institution operating in Switzerland and throughout the world.

4. Defendant, DAVID MOSER is a Swiss citizen and an employee of BANQUE CANTONALE NEUCHATELOISE a/k/a BANQUE CANTONALE NEUCHATEL a/k/a BCN, in a job titled "Private Banking Advisor", working for and on behalf of his employer BANQUE CANTONALE NEUCHATELOISE a/k/a BANQUE CANTONALE NEUCHATEL a/k/a BCN.

5. Defendant, NELCY MAYOREZ-BOVET a/k/a "CX2" is a Swiss citizen and an employee of BANQUE CANTONALE NEUCHATELOISE a/k/a BANQUE CANTONALE NEUCHATEL a/k/a BCN in a job titled "Business Relations Banker" working for and on behalf of his employer BANQUE CANTONALE NEUCHATELOISE a/k/a BANQUE CANTONALE NEUCHATEL a/k/a BCN.

## JURISDICATION AND VENUE

6. This Court possesses subject matter jurisdiction over this dispute pursuant to 28 U.S.C. Section 1332(a).

7. The Parties are completely diverse and the amount in controversy exceeds Seventy-five Thousand ($75,000) dollars, exclusive of interest and costs. Indeed, BCN has caused EAWC well over Two Hundred Million Dollars ($200,000,000) in damages.

8. This Court has personal jurisdiction over BCN pursuant to Florida Statute 48.193(1). BCN caused injury within the State by acts occurring outside the State while being engaged in business with EAWC which is located within this State.

9. The Defendant, BCN has sufficient contacts with the State of Florida so that the exercise of jurisdiction in this case does not offend traditional notions of fair play and substantial justice. At all times material hereto, BCN conducted business with EAWC, a Florida corporation at its bank located in Neuchatel, Switzerland. In addition, BCN takes US dollars from Florida corporations and individuals living in

the State of Florida, and thereby conducts business in the State of Florida. In addition, the actions taken by BCN arising in this matter have seriously damaged a Florida corporation and individual shareholders of EAWC, who reside in the State of Florida. In addition, the tortious actions herein of BCN were intentional, with full knowledge that the causation of damages in Florida would occur, given that BCN knew that the Plaintiff was a Florida corporation.

10. The Defendants MOSER and MAYOREZ-BOVET have sufficient contacts with the State of Florida so that the exercise of jurisdiction in this case does not offend traditional notions of fair play and substantial justice. At all times material hereto, MOSER and MAYOREZ-BOVET, as employees of Defendant BCN conducted business with EAWC, a Florida corporation through Defendant BCN bank located in Neuchatel, Switzerland. In addition, the actions of MOSER and MAYOREZ-BOVET arising in this matter have seriously damaged a Florida corporation and individual shareholders of EAWC, who reside in the State of Florida. In addition, the tortious actions herein of MOSER and MAYOREZ-BOVET were intentional, with full knowledge that the causation of damage in Florida was likely to occur, given that MOSER and MAYOREZ-BOVET knew that the Plaintiff was a Florida corporation.

11. Pursuant to 28 USC 1391 (c) (3), venue is also appropriate in this Court as the Defendants BCN, MOSER and MAYOREZ-BOVET are not residents in the United States.

## BACKGROUND

12. EAWC has been in the renewable technology business since February, 2012, with its Florida office located in Coral Gables, FL. EAWC also conducts a portion of its business outside the United States. EAWC is involved in renewable energy projects throughout the world. EAWC has, at all times pertinent hereto, been preparing to enter into an Initial Public Offering (IPO) of its stock.

13. In the process of expanding EAWC's development and its engineering needs, EAWC hired a Swiss company, Swiss Water Tech Research & Development, S.A. (hereinafter SWATE). SWATE was hired to do feasibility studies for EAWC's

projects, and in turn, the research and development of SWATE assists EAWC with technological innovations in the renewable energy field.

14. SWATE has been a client of the Defendant, BCN since May, 2013. Defendant MOSER has been the specific banker dealing with SWATE's banking business.

15. Prior to the improper actions of the Defendants, SWATE had opened four (4) bank accounts at the Defendant BCN's bank. The accounts were for transactions in U.S. Dollars (USD), Swiss Francs (SHF), Euros (EUR), and the deposit of Six Million (6,000,000) EAWC Shares in the form of stock certificates.

16. On March 4, 2014, and of its own volition, Defendant BCN, through its agents/employees. Defendants MOSER and MAYOREZ-BOVET, contacted the Money-laundering Reporting Office of Switzerland (hereinafter MROS) and alleged fraud and money-laundering on the part of EAWC and SWATE, in a report/application entitled Communication selon l'art. 9 LBA. (A copy of said report and a certified translation thereof is attached hereto as Plaintiff's Composite Exhibit "A"). Upon information and belief, Defendant MAYOREZ-BOVET (identified therein as "CX2") was the author of Communication selon l'art. 9 LBA. sent to MROS.

17. Based on the above report/application prepared by Defendants MOSER and MAYOREZ-BOVET on behalf of the Defendant BCN, MROS ordered an investigation based on the Defendants' allegations of fraud and money-laundering by EAWC to be conducted by the Neuchatel Canton State Attorney's Office (NCSAO) concerning those allegations.

18. The Defendants' allegations of fraud and money-laundering were fabricated and assumptions by Defendants MOSER and MAYOREZ-BOVET (on behalf of the Defendant BCN) without any tangible evidence of wrongdoing on the part of either SWATE or EAWC. In fact, in an attempt to give the MROS report/application credence, the Defendant MOSER withheld and ignored contradictory and exculpable information about SWATE and EAWC (that was in his knowledge, possession, and control) that indicated in fact EAWC and SWATE did **not** commit fraud or money-laundering.

19. The false and misleading allegations in the report/application by BCN to MROS were the sole and direct cause of the criminal investigation of EAWC and SWATE.

20. The investigation by the NCSAO, which was titled "An Investigation into SWATE's Banking Activities" was more specifically an intensive investigation into EAWC in particular, and not so much about SWATE's banking activities.

21. In the early morning hours of March 25, 2014, officers of the NCSAO, with firearms at the ready, raided the residence of EAWC's Chief Operating Officer, Ralph Hofmeier and SWATE's Chief Operating Officer, Irma Velazquez. The NCSAO detained and interrogated both Hofmeier and Velazquez each for over ten (10) hours. In the course of this investigation, the NCSAO seized private corporate information and documentation belonging to EAWC. The NCSAO seized corporate records, the EAWC's list of investors, and the EAWC's computer, all from the possession of EAWC's Chief Operating Officer, Ralph Hofmeier. All these actions were taken by the NCSAO at the request of the MROS, solely and proximately because of the false and misleading MROS report/application filed by the Defendants, BCN, MOSER and MAYOREZ-BOVET.

22. The investigation went so far as to include improper direct contact by the NCSAO of private individuals who were listed in EAWC's list of investors in its computer and records. The NCSAO also revealed to EAWC's investors that they were investigating fraud and money-laundering charges against EAWC and SWATE.

23. Word of this investigation of EAWC and SWATE spread like wild-fire amongst the public, and more particularly amongst EAWC's shareholders. And as a result, EAWC's reputation was substantially damaged. EAWC was damaged as investors requested refunds of their investment; third-party customers of EAWC have cancelled contracts; negotiations for contracts in progress have been terminated by customers; all as a result of the damage to EAWC's reputation because of the investigation.

24. Ultimately, the NCSAO's investigation showed **no** criminal wrong-doing nor any wrong-doing whatsoever by EAWC or SWATE. **No** charges were ever filed against EAWC nor SWATE and the investigation is **closed**.

## COUNT I
## INTENTIONAL INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONSHIPS

25. EAWC re-alleges and reincorporates paragraphs one through twenty-four as though fully set forth herein.
26. EAWC has valuable contractual and business relationships with individual investors, manufacturers, wholesalers, and retailers.
27. EAWC maintains a website for commercial entities and individuals to order EAWC's equipment and technology.
28. EAWC had an ongoing beneficial relationship with SWATE as its Swiss "arm" to assist in obtaining business throughout the world, including SWATE being the research and development "arm" of EAWC.
29. BCN and MOSER were aware of the independent relationship between EAWC and SWATE, and that both EAWC and SWATE conducted business with customers in the renewable energy field.
30. BCN, MOSER and MAYOREZ-BOVET have tortiously interfered with EAWC's relationship with SWATE, and with other business customers and investors, manufacturers and wholesalers of EAWC by their false statements, intentional omissions of facts and information within or accessible to their control, and intentionally making misleading misrepresentations in the MROS report/application (Plaintiff's Composite Exhibit "A") to the MROS; those false statements, intentional omissions, and misrepresentations being used to initiate a criminal investigation into EAWC.
31. BCN's, MOSER's and MAYOREZ-BOVET's actions were intentional, based on lies, omissions of known facts, and misrepresentations, and withholding of "exculpable" evidence and facts that Defendants knew or should have known were false.

32. BCN's, MOSER's and MAYOREZ-BOVET's actions unjustifiably and intentionally interfered with EAWC's business relationships.
33. As a result of BCN's, MOSER's and MAYOREZ-BOVET's actions, EAWC has been damaged by lost business relationships because of the negative publicity caused by and related to the MROS ordered criminal investigation by the NCSAO.
34. BCN's, MOSER's and MAYOREZ-BOVET's intentional, improper and false allegations in the MROS report/application has severely and irrevocably damaged EAWC's relationship with other manufacturers, wholesalers, business customers, and individual investors, including, but not limited to the cancelation of a One Hundred Ninety-Seven Million Dollar ($197,000,000) project in Nigeria with Action Cement International, Ltd., a Nigerian company; and the cancelation of a Five Million Dollar ($5,000,000) pilot project in Neuchatel city.

## COUNT 2- LIBEL

35. EAWC re-alleges and reincorporates paragraphs one through twenty-four as though fully set forth herein.
36. The MROS report/application filed by Defendants BCN and MOSER and MAYOREZ-BOVET contained lies and false statements about Plaintiff EAWC that Defendant MOSER knew were false at the time he made them.
37. Defendant MAYOREZ-BOVET, acting on the false information given to her by Defendant MOSER prepared the MROS report on behalf of Defendants BCN and MOSER. MAYOREZ-BOVET is referred to in said report as "CX2".
38. Defendants MOSER and MAYOREZ-BOVET were the agents and employees of Defendant BCN and were acting in the course and scope of their employment.
39. The Defendants' false allegations in the report were libel per se as Defendants' statements labeled Plaintiff EAWC a fraudulent company involved in money-laundering, a crime.
40. The defamatory MROS report/application was intentionally published by Defendants BCN, MOSER, and MAYOREZ-BOVET to the MROS, which published that report to the NCSAO.

41. As a proximate result of the above-described libelous publication, EAWC has suffered loss to its reputation, shame and substantial money damages to its business, both in the present and in the future.
42. The above-described publication was not privileged because it was published by Defendants with the state of mind to injure and damage the reputation of EAWC, and specifically as to Defendant MOSER who had expressed a desire to "get" Plaintiff.
43. Because of Defendants' malice in publishing the false statements, Plaintiff EAWC seeks punitive damages in the amount of $500,000,000.00, or in an amount sufficient to "punish" Defendants for said malicious and libelous acts.
44. Plaintiff demands Trial by Jury.

**WHEREFORE,** Plaintiff, **EUROSPORT ACTIVE WORLD CORP.** requests this Court to enter judgment against the Defendants, **BANQUE CANTONALE NEUCHATELOISE, a/k/a BANQUE CANTONALE NEUCHATEL a/k/a BCN, DAVID MOSER and NELCY MAYOREZ-BOVET** for damages in an amount in excess of Two Hundred Million Dollars ($200,000,000), plus punitive damages in the amount of Five Hundred Million Dollars ($500,000,000), plus court costs and any other remedy this court deems just.

Respectfully submitted,

*/s/ Corey E. Hoffman*

COREY E. HOFFMAN, P.A.
3250 MARY ST., #303
Miami, FL 33133
305-443-5600 (p)
305-443-6624 (f)
corey@coreyhoffman.com
Fla. Bar No. 229776

 FAX +41 32 723 64 05 BCN

+41 32 723 64 05

3

13468 / 53

## Communication in accordance with Article 9 of the Law on Money Laundering (LBA)

To be sent by FAX - or, failing that, by correspondence A, to:

**Office of Communication on matters involving money laundering**
Federal Police Agency
Nussbaumstrasse 29
3003 Bern
**Fax: 031-323 39 39**
Phone: 031-323 40 40

### Sender (information relative to the financial intermediary)

| | |
|---|---|
| Company: | Neuchâtel Cantonal Bank |
| Street: | Place Pury 4 |
| Postal Code / Domicile: | 2000 Neuchâtel |
| Contact person: | CX2 |
| Phone: | 032 723 62 75 |
| Fax: | 032 723 64 05 |
| Date of communication: Sender's reference number (if any) | March 4, 2014 |
| Number of pages (including Appendices): | 56 |

### Information specific to the business matter

| | |
|---|---|
| Place of business matter: (e.g. place of accounting or place of cash transactions) | Neuchâtel |
| If applicable, place of business filing: | |
| Account no. / Deposit no. or indicate "cash transaction": | 1018.79.52.6 EUR - 1018.79.53.1 USD - 1018.79.51.1 CHF - Net deposit - 1018.80.04.1 |

Please enclose the statement of assets at the time of this communication in the Appendix.

**PLAINTIFF'S COMPOSITE EXHIBIT "A"**



04/03 2014 MAR 12:14 FAX +41 32 723 64 05 BCN ☒002/056

+41 32 723 64 05

## Communication according to Article 9 of the Law on Money Laundering (LBA)

### Information relative to the transactor

### For individuals

| | |
|---|---|
| Last name, first name: | |
| Home address: | |
| Date of birth: | |
| Nationality: | |
| Place of origin (if known): | |
| Phone (if known): | |
| Fax (if known): | |
| Occupation (if known): | |

### For legal entities

| | |
|---|---|
| Company: | Swiss Water Tech Research & Development (SWATE) SA |
| Head office address: | Puits-Godet 61 – 2000 Neuchâtel |
| Phone (if known): | 032 534 97 23, Website: www.swisswatertech.com |
| Fax (if known): | |
| Business sector (if known): | New technologies for environmental protection |

### For both individuals and legal entities

| | |
|---|---|
| Identification document and no.: please enclose a copy in the Appendix | Trade register extract |
| Granting authority: | Neuchâtel Trade Register |
| Date: | January 14, 2013 |
| To whom or how is the correspondence transmitted? | |
|    directly to the transactor: | X |
|    by general delivery: | |
|    to a third party, please indicate the name and address: | |
| Additional information: relative to third parties involved (individuals or legal entities) Example: payment beneficiary, the individual making the deposit, bearer of checks or securities, beneficiary of the guarantee, guarantor, third-party guarantor | |
| Type of account: Example: individual account, joint account, online account, global account | USD, EUR and CHF-denominated management accounts – net deposit |
| Do other business matters pertaining to this communication currently exist with this transactor?: Example: additional accounts or deposits | |

*[Stamp: ProTranslating — Certified Translation]*

04/03 2014 MAR 12:16  FAX +41 32 723 64 05  BCN     @009/055

+41 32 723 64 05

**Communication according to Article 9 of the Law on Money Laundering (LBA)**

### Questions regarding the agent / authorized signatory

| | |
|---|---|
| Last name, first name: | HOFMEIER Ralph |
| Home address (if known): | Rue de l'Observatoire 40a, 2000 Neuchâtel |
| Date of birth (if known): | August 5, 1961 |
| Nationality / Place of origin (if known): | German |
| Is this person an agent or authorized signatory? | Board member and authorized signatory |

| | |
|---|---|
| Last name, first name: | VELASQUEZ DIAZ Irma |
| Home address (if known): | Rue de l'Observatoire 40a, 2000 Neuchâtel |
| Date of birth (if known): | June 14, 1966 |
| Nationality / Place of origin (if known): | Mexican |
| Is this person an agent or authorized signatory? | Board member and authorized signatory |

Should other agents or other authorized signatories exist, please complete the same responses regarding them in the Appendix.

### Questions relative to the economic beneficiary

| | |
|---|---|
| Are the transactor and economic beneficiary the same party?: | yes |
| In the answer is no, please provide details as indicated in Form A | |

### How did this matter arise?

The company Swiss Water Tech Research & Development (**SWATE**) SA has been a BCN client since May 2013. We entered into a relationship via its Board Member **Ralph HOFMEIER** subsequent to a mortgage financing request to acquire a luxury real estate property he was seeking to buy in Neuchâtel. Ultimately, this project never came to fruition.

According to information provided by Board Member **Ralph HOFMEIER**, **SWATE** is being used to carry out R&D for the American parent company Eurosport Active World Corporation (EAWC) located in Miami, Florida. **Ralph HOFMEIER** holds the position of CEO and his associate acts as CFO. The American company would be a distributor of "green technology" products.

According to information received from the Board Members upon entering into our business relations, an initial public offering (IPO) of the American company EAWC had been planned during the third quarter of 2013. For the time being, this IPO has yet to occur. The Board Members regularly indicate to us that the scheduling of this offering has been postponed.

At present, four financial services have been initiated on behalf of SWATE: fund management accounts opened in USD (American dollars), CHF (Swiss francs) and EUR (Euros), plus a net deposit account, into which a total of 6 million shares of EAWC were physically deposited (in the form of a certificate) on August 23, 2013.

*Certified Translation*

## Communication according to Article 9 of the Law on Money Laundering (LBA)

### Why is this case suspicious?

The company EAWC had previously been registered under the name of Eagle International Holdings Group, Inc. located in Boca Raton, Florida. Its creation dates back to December 2007 and involved conversion of the company WealthHound.com Inc., which had been incorporated in Delaware in August 2000.
In 2008, the name was changed to Eurosport Active World Corp. and **Ralph HOFMEIER** appeared for the first time as company President and CEO.

The company EAWC is listed on the Nasdaq over-the-counter (OTC) secondary market. EAWC shares are listed under the ISIN number: US2988OV1052 - with the symbol EAWD.US.

The most recent share trading price on the Nasdaq was recorded on December 19, 2013 for an amount of USD 3,354.00 at a share price of USD 6.00.
The volume of securities traded on the OTC is trivial. The spread between the bid price (USD 3.00) and the offer price (USD 30.00) is unusual.

Our custodian SIX Securities informed us by e-mail on February 26, 2014 that EAWC securities had been refused by the American custodian BBH in May 2013 and, consequently, SIX was completely opposed to accepting their deposit.

**Irma VELASQUEZ** was involved in a compulsory sale proceeding for a real estate property located in the municipality of Gland (with an appraised value of CHF 1.4 million). Her apartment was placed on the auction block at the request of the attaching creditors for January 7, 2014 (according to the Swiss Official Gazette of Commerce, FOSC, issue dated September 10, 2013). We are unaware if this sale ever took place.

A retroactive investigation of the **SWATE** company's account movements reveal the following transactions:

**USD account no. 1018.79.53.1**
Since July 2013, 6 wire transfers from third parties, totaling USD 150,935.00 and originating from Switzerland, Israel, the United States and the Netherlands, have been recorded. Incoming bank transfers from the parent company EAWC have been recorded for a total of USD 121,080.00.
Nearly all of these incoming funds were subsequently transferred into **SWATE**'s CHF- or EUR-denominated management accounts, amounting to USD 238,116.55.

**CHF account no. 1018.79.51.1**
Since August 2013, 3 wire transfers from third parties originating in Switzerland and totaling CHF 105,000 have been credited. The recorded outgoing funds have been used to pay Board Member salaries as well as overhead expenses (rent, computer services, office furniture, etc.).

**EUR account no. 1018.79.52.6**
In June 2013, a wire transfer in the amount of EUR 50,000.00, sent by Leticia and Mike Meerettig in Germany, was credited. According to the stated payment purpose, the transferred sum appears to correspond to a loan. The outgoing funds wired to Leticia Meerettig Velasquez may reflect periodic reimbursements. This individual (Leticia Meerettig Velasquez) has the same last name as our client, Irma VELASQUEZ. Two other wire transfers, totaling EUR 13,000 and originating from third parties located in Germany and Spain, have also been recorded.

## Communication according to Article 9 of the Law on Money Laundering (LBA)

The various incoming deposits from third parties to the order of **SWATE** may correspond to investments in the company. These incoming funds have been immediately used to pay current expenses of the two Board Members (a portion for their salaries, payments of their personal and business rent, etc.). No visible investment has been made. A net deposit account was opened in which to deposit EAWC company securities, amounting to 6 million shares. Each of these securities is worth a presumed value of USD 6.00/unit. Moreover, this valuation corresponds to the indications provided by Telekurs. Consequently, the valuation of **SWATE**'s deposit with BCN amounts to roughly CHF 31 million.

Our institution has also opened two accounts in the name of these two Board Members. In these accounts, we have also deposited EAWC company securities, i.e. 25 million shares into the deposit account held by **Ralph HOFMEIER** and 16 million shares into the deposit account of **Irma VELASQUEZ**, respectively.

The Websites of both **SWATE** and EAWC are, for all intents and purposes, identical and give the impression of companies of some stature, yet we have not been able to identify any specific activity. It should be noted that **Irma VELASQUEZ** is a professional Webmaster by training.

A newspaper article, written by an independent Pakistani journalist, focusing on a letter of intent for USD 20 million has not been documented by any other source.

The EAWC company appears to be an empty "shell company". No trace of any commercial activity has been detected. No Web references to products or to a specific business proposal relative to the waste reprocessing project can be found.

Subsequent to our request for additional information regarding the IPO and its state of progress, our clients informed us that they had retained an American lawyer to act as their legal advisor. According to our research, this lawyer is specialized in civil matters. The lead Bank retained for the public offering would be a Geneva-based bank, but no further information on it was available. Moreover, our clients provided us with an SEC reference number (a CIK number), for which we have found no corroboration.

At this stage of our research, we have been unable to formally establish that any criminal infraction has been committed.

Nonetheless, we have not been able to dispel the suspicions surrounding these business relations and the truthfulness of the allegations by the individuals concerned. More specifically, we have not found any valid corroborating external source to lend credibility to the information furnished by our clients.

SWATE's account records show nearly CHF 300,000 in incoming funds which may originate from individuals with the intention of investing in green energies, but who in reality may be victims of fraud.

**Have you already undertaken any specific action? (please explain the nature of any steps taken)**

All banking transactions, both incoming and outgoing, involving the **SWATE** company have been effectively blocked.

*Certified Translation*

FAX +41 32 723 64 05 BCN

+41 32 723 64 05

13468/53

# Communication selon l'art. 9 LBA

à envoyer par FAX – ou, à défaut – par courrier A, à:

Bureau de communication en matière de blanchiment d'argent
Office fédéral de la police
Nussbaumstrasse 29
3003 Berne
Fax 031-323 39 39
Téléphone 031-323 40 40

### Expéditeur (informations concernant l'intermédiaire financier)

| | |
|---|---|
| Société | Banque Cantonale Neuchâteloise |
| Rue | Place Pury 4 |
| N° postal / Domicile | 2000 Neuchâtel |
| Interlocuteur | CX2J |
| Téléphone | 032 723 62 75 |
| Fax | 032 723 64 05 |
| Date de la communication | 04.03.2014 |
| N° de référence de l'expéditeur (si existant) | |
| Nombre de pages (annexes comprises) | 56 |

### Informations concernant la relation d'affaires

| | |
|---|---|
| Lieu de la relation d'affaires (par exemple, lieu de la comptabilité ou lieu des opérations au comptant) | Neuchâtel |
| Le cas échéant, lieu de la déclaration de l'affaire | |
| N° de compte / N° de dépôt ou mentionner "opération de caisse" | 1018.79.52.6 EUR – 1018.79.53.1 USD – 1018.79.51.1 CHF – Dépôt Net – 1018.80.04.1 |

Veuillez joindre l'état des avoirs au moment de la communication en annexe, s.v.p.

04/03 2014 MAR 12:16  FAX +41 32 723 64 05 BCN   ☒002/056

+41 32 723 64 05

## Communication selon l'art. 9 LBA

9

**Informations concernant le cocontractant**

### Pour personnes physiques

| | |
|---|---|
| Nom et prénom | |
| Adresse du domicile | |
| Date de naissance | |
| Nationalité | |
| Lieu d'origine (si connu) | |
| Téléphone (si connu) | |
| Fax (si connu) | |
| Profession (si connu) | |

### Pour personnes morales

| | |
|---|---|
| Société | : Swiss Water Tech Research & Development (SWATE) SA |
| Adresse du siège | : Puits-Godet 61 – 2000 Neuchâtel |
| Téléphone (si connu) | : 032 534 97 23 site internet : www.swisswatertech.com |
| Fax (si connu) | |
| Domaine d'activité (si connu) | : Nouvelles technologies dans le respect de l'environnement |

### Pour personnes physiques et morales

| | |
|---|---|
| Document d'identification et numéro veuillez joindre une copie en annexe | : Extrait du registre du commerce |
| Autorité qui l'a délivré | : Registre du commerce Neuchâtel |
| Date | : 14.01.2013 |
| A qui ou comment le courrier est-il transmis ? | |
|   directement au cocontractant | : ☒ |
|   par banque restante | : ☐ |
|   à un tiers; veuillez indiquer le nom et l'adresse | : ☐ |
| Informations supplémentaires concernant des tierces personnes (physiques ou morales) impliquées par ex. bénéficiaire du paiement, la personne qui a effectué le versement, porteur de chèques / papiers-valeurs, bénéficiaire de la garantie, garant, tiers garant | : |
| Type de compte par ex. compte individuel, compte joint, compte numérique, compte global. | : Comptes de gestion USD- EUR et CHF – un dépôt-net |
| Est-ce que d'autres relations d'affaires concernant cette communication existent avec le cocontractant ? p. ex. comptes ou dépôts supplémentaires | : |

04/03 2014 MAR 12:15  FAX +41 32 723 64 05 BCN    A                            ☒003/056

+41 32 723 64 05

Communication selon l'art. 9 LBA

10

### Questions concernant le mandataire/la personne autorisée à signer

| | |
|---|---|
| Nom et prénom | : HOFMEIER Ralph |
| Adresse du domicile (si connu) | Rue de l'Observatoire 40a, 2000 Neuchâtel |
| Date de naissance (si connu) | : 05.08.1961 |
| Nationalité/Lieu d'origine (si connu) | : Allemande |
| S'agit-il du mandataire ou d'une personne autorisée à signer? | : Administrateur et personne autorisée |

| | |
|---|---|
| Nom et prénom | : VELAZQUEZ DIAZ Irma |
| Adresse du domicile (si connu) | Rue de l'Observatoire 40a, 2000 Neuchâtel |
| Date de naissance (si connu) | : 14.06.1966 |
| Nationalité/Lieu d'origine (si connu) | : Mexicaine |
| S'agit-il du mandataire ou d'une personne autorisée à signer? | : Administratrice et personne autorisée |

Dans les cas où il existe d'autres mandataires ou d'autres personnes autorisées à signer, veuillez s.v.p, répondre aux mêmes questions en annexe.

### Questions concernant l'ayant droit économique

| | |
|---|---|
| Est-ce que le cocontractant et l'ayant droit économique sont identiques ? | : oui |
| En cas de réponse négative, veuillez fournir les indications selon le formulaire A | |

### Comment cette affaire s'est-elle développée ?

La société Swiss Water Tech Reasearch & Development (SWATE) SA est cliente de la BCN depuis mai 2013. Nous sommes entrés en relation par son administrateur Ralph HOFMEIER suite à une demande d'un financement hypothécaire pour l'acquisition d'un bien immobilier de luxe qu'il désirait acquérir à Neuchâtel. Ce projet ne s'est finalement pas concrétisé.

Selon les informations de l'administrateur Ralph HOFMEIER, SWATE est utilisée pour le développement du R & D de la société-mère américaine Eurosport Active World Corporation (EAWC) sise à Miami en Floride. Ralph HOFMEIER occupe le poste de CEO et son associée celui de CFO. La société américaine distribuerait des produits de « green technologies ».

Selon les informations reçues des administrateurs au moment de l'entrée en relation d'affaires, une introduction en bourse (IPO) de la société américaine EAWC était prévue dans le troisième trimestre 2013. Cette IPO ne s'est pour l'instant pas concrétisée. Les administrateurs nous indiquent régulièrement que les délais sont repoussés.

A ce jour, quatre prestations sont ouvertes au nom de SWATE : comptes de gestion en USD, CHF et EUR ainsi qu'un dépôt-net où 6'000'000 actions EAWC ont été déposées physiquement (sous forme de certificat) le 23.08.2013.

+41 32 723 64 05

## Communication selon l'art. 9 LBA

11

### Pourquoi ce cas est-il suspect?

La société EAWC était précédemment inscrite sous le nom de Eagle International Holdings Group, Inc. sise à Boca Raton en Floride. Sa création remonte à décembre 2007 et est intervenue par conversion de la société WealthHound.com Inc laquelle avait été incorporée au Delaware en août 2000.
En 2008, le nom a été modifié en Eurosport Active World Corp et **Ralph HOFMEIER** est apparu pour la première fois en tant que President-Director de la société.

La société EAWC est cotée sur le 2$^{ème}$ marché (OTC) du Nasdaq. Les actions EAWC sont cotées avec le no ISIN : US2988OV1052 – Symbole EAWD.US

Dernier prix échangé au Nasdaq du 19.12.2013 pour un montant de USD 3'354.00 au cours de USD 6.00.
Le volume des titres échangés sur l'OTC est anecdotique. L'écart de prix entre la demande (USD 3.00) et l'offre (USD 30.00) est inhabituel.

Notre dépositaire SIX Securities nous a informés par mail le 26 février 2014 que les titres EAWC avaient été rejetés par le dépositaire américain BBH en mai 2013 et par conséquent que ceux-ci ne peuvent aucunement être déposés chez eux.

Irma VELAZQUEZ a fait l'objet d'une procédure de vente forcée d'un bien immobilier sis sur la commune de Gland (valeur d'expertise CHF 1'400'000.00). Son appartement a été mis aux enchères sur demandes des créanciers saisissants pour 7 janvier dernier (EOSC 3ii 10.09.2013). Nous ne savons pas si la vente a eu lieu.

L'examen rétroactif des mouvements sur les comptes de la société **SWATE** font apparaître les opérations suivantes :

**Compte USD No 1018.79.53.1**
Depuis juillet 2013, 6 virements de tiers soit USD 150'935.00 provenant de Suisse, Israël, Etats-Unis et Pays-Bas ont été enregistrés. Des virements bancaires de la société—mère EAWC ont été comptabilisés en entrées pour un montant total de USD 121'080.00.
La presque totalité de ces entrées ont été transférés sur les comptes de gestions CHF ou EUR de SWATE pour USD 238'116.56.

**Compte CHF No 1018.79.51.1**
Depuis août 2013, 3 virements de tiers en provenance de Suisse totalisant CHF 105'000.00 ont été crédités. Les sorties enregistrées ont servi à payer les salaires des administrateurs ainsi que des frais de fonctionnement (loyer, informatique, meubles de bureaux etc...)

**Compte EUR no 1018.79.52.6**
En juin 2013, un virement de EUR 50'000.00 d'ordre de Leticia et Mike Meerettig d'Allemagne a été crédité. Selon le motif de paiement, ce virement semble correspondre à un prêt. Les sorties en faveur de Leticia Meerettig Velazquez pourraient être des remboursements échelonnés. Cette dernière personne porte le même nom de famille que notre cliente, Irma VELAZQUEZ. Deux autres virements, d'ensemble EUR 13'000.--, en provenance de tiers domiciliés en Allemagne et Espagne ont été enregistrés.

Les différentes entrées provenant de tiers en faveur de **SWATE** pourraient correspondre à des investissements dans la société. Ces fonds entrants ont été immédiatement utilisés pour payer des charges courantes des deux administrateurs (partie des salaires, paiements de leur loyer personnel et professionnel etc..). Aucun investissement n'a visiblement été réalisé.
Un dépôt-net a été ouvert pour y déposer les titres de la société EAWC soit 6'000'000 actions. Chacun des titres a pour valeur indicative USD 6.00/pièce. Cette valorisation

+41 32 723 64 05

Communication selon l'art. 9 LBA

12

correspond à celle indiquée par Telekurs. Par conséquent, la valorisation du dépôt SWATE auprès de la BCN avoisine les CHF 31 millions.

Notre établissement a également ouvert deux relations d'affaires au nom des deux administrateurs. Sur ces relations nous avons également déposés des titres de la société EAWC soit respectivement 25'000'000 actions dans le dépôt de Ralph HOFMEIER et 16'000'000 actions dans le dépôt de Irma VELAZQUEZ.

Les sites internet de SWATE et de EAWC sont en tous points similaires et donnent une impression de sociétés d'une certaine envergure alors que nous n'avons trouvé aucune activité concrète. A noter que Irma VELAZQUEZ est webmaster de profession.

Un article de presse portant sur une lettre d'intention de USD 200 millions et écrit par un journaliste indépendant pakistanais n'a été documenté par aucune autre source.

La société EAWC semble être une « coquille » vide. Aucune trace d'une quelconque activité commerciale n'a été détectée. Sur internet, il n'est fait aucune référence à des produits ou une idée concrète relative au projet de remaniement des déchets.

Suite à notre demande de compléments concernant l'IPO et son état d'avancement, les clients nous ont informés avoir choisi un avocat américain en tant que legal adviser. Selon nos recherches, ce dernier est spécialisé dans les affaires civiles. La Banque chef de file retenue pour le going public serait une banque genevoise sans plus d'information la concernant. Enfin, les clients, nous ont indiqué un numéro de référence à la SEC (no CIK) pour lequel nous n'avons trouvé aucune concordance.

A ce stade de nos recherches, nous n'avons pas été en mesure d'établir formellement l'existence d'une infraction pénale.

Il n'en demeure pas moins que nous n'avons pas été en mesure de dissiper les soupçons entourant ces relations d'affaires et la véracité des allégations des personnes concernées. Plus particulièrement, nous n'avons trouvé aucun élément corroboratif externe probant pour crédibiliser les informations données par nos clients.

Les comptes de SWATE ont enregistré pour près de CHF 300'000.-- d'entrée de fonds qui pourraient provenir de personnes qui pensent investir dans des énergies vertes mais qui pourraient n'être que des victimes d'une escroquerie.

Est-ce que vous avez déjà entrepris une action quelconque? (veuillez expliquer de quoi il s'agit)

Blocage en entrée et en sortie des relations au nom de la société SWATE.



# CERTIFICATE OF ACCURACY

The undersigned, Dr. Luis A. de la Vega, Chairman of ProTranslating, appearing on behalf of ProTranslating, hereby states, to the best of his knowledge and belief, that the foregoing is an accurate translation of the attached original document in the ___French___ language, consisting of ___5___ pages, and that this is the last of the attached.

Luis A. de la Vega, Ph. D.
Chairman
For ProTranslating

State of Florida
County of Miami-Dade

The foregoing certificate was acknowledged before me on this ___23___ day of ___June___, ___2014___, by Dr. Luis A. de la Vega, Chairman of ProTranslating, a Florida corporation, on behalf of the corporation. He is personally known to me.

Notary Public

My commission expires:



ENKRII ZAMILAN
Notary Public - State of Florida
My Comm. Expires Jul 2, 2017
Commission # FF 032952

2850 Douglas Rd. Coral Gables, Fl 33134 Ph: 305.371.7887 Fax 305.371.4816
www.protranslating.com